UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

RACHEL GALARZA

                                                            CIVIL ACTION

VERSUS

                                                            12-722-JJB-RLB

OCHSNER HEALTH SYSTEMS, INC.

## RULING ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

These matters are before the Court on two motions. The first is a Motion (doc. 19) for Partial Summary Judgment brought by Plaintiff, Rachel Galarza ("Galarza"). Defendant, Ochsner Clinic Foundation, improperly identified as Ochsner Health Systems Inc. ("Ochsner"), has filed an opposition (doc. 27). The second is a Motion (doc. 21) for Summary Judgment brought by Ochsner. Galarza has filed an opposition (doc. 31), to which Ochsner has filed a reply (doc. 34). Oral argument is unnecessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. After reviewing the motions and evidence submitted in support thereof, the Court is ready to rule.

### I.      Background

This case arises out of an employment relationship between Galarza and Ochsner which spanned from March 2008 until May 2012. The following facts are either undisputed or taken as true based upon evidence submitted by the non-movant plaintiff. Other undisputed facts will be discussed when relevant throughout the course of evaluating Galarza's claims. Galarza began working for Ochsner at its main campus in New Orleans, Louisiana as a Registration Coordinator on March 31, 2008. After she received her master's degree in healthcare management from the University of New Orleans in 2009, Ochsner promoted Galarza to the position of Clinical Services Manager and relocated her to its Baton Rouge Campus. She began

1

work in her new position as a salaried employee on June 1, 2009.  As a Clinical Services Manager, Galarza was charged with new responsibilities including managing and coordinating the daily operations of clinical departments of which she was assigned with clinical directors and department heads; planning and organizing all clinical functions; and coordinating the implementation of disease management and wellness systems at the direction of Ochsner's physicians.

On January 3, 2011, approximately a year and a half into her position as Clinical Services Manager, Galarza learned that she had breast cancer.  Within weeks of learning of the diagnosis, Galarza had to undergo cancer-related surgery.  She took medical leave from January 21 through February 25, 2011.  Despite her surgeon's recommendation to take eight weeks off to recover from surgery and knowing that Ochsner's manager disability policy allowed her to take up to six months of paid medical leave, Galarza chose to return to work after only four weeks of recovery. After returning to work, Galarza needed to receive chemotherapy treatments which she did periodically between February 25, 2011 and September 6, 2011.  Also during that time, there was a change in upper management.  In April 2011, Nga Vu, the Vice President to whom Galarza reported when she first arrived at the Baton Rouge Campus of the Ochsner Medical Center, left to accept a position at the West Bank Campus in New Orleans.  Thereafter, Galarza reported to Vice President Kristie Genzer ("Genzer").

Sometime around the end of April 2011, Galarza informed Genzer that the side effects of her chemotherapy treatments were affecting her ability to complete her work.  Genzer agreed to provide her with a summer intern to help her with some of her responsibilities.  The intern was

assigned to work with Galarza until the end of his internship in July 2011.[1]  Additionally, other managers were assigned to cover Galarza's departments during illness related absences from work.

Around the end of August 2011, Galarza was again finding it difficult to complete her work tasks.  She met with Genzer to discuss reducing the scope of her responsibilities.  At that meeting, she presented Genzer with a physician's note which stated: "There have been recognized indications of 'cancer chemotherapy brain' where the effects of steroids and chemotherapy drugs do take a period of time to leave the patient.  Working conditions in terms of narrowing work scope may be helpful in this particular case in my opinion."  *Galarza's Response to Defendant's Statement of Disputed Material Facts*, Doc. 31-1, at ¶ 22.  In response, Genzer transferred one of Galarza's departments to a coworker, Jerry Aucoin, who had been overseeing the clinic while Galarza was on medical leave.  Approximately a month later, Galarza informed Ochsner that she would be undergoing reconstructive surgery and would need at least four to six weeks off to recover.  Ochsner approved Galarza's request and allowed her to take the remainder of the year off of work on short-term disability leave.

Upon her return to work in January 2012, Galarza met with Genzer, the medical director, Dr. Robert Hart, and a representative from human resources, Kristen Haffner, to discuss the scope of Galarza's duties going forward.  As a result of this meeting, Galarza's responsibilities were modified and reduced.  Though there was a reduction in her responsibilities, Galarza did not experience a reduction of her pay.  Later that month, Galarza filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  About a month after her return to work, Galarza informed Genzer that she needed to undergo follow-up surgery to

---

[1] The length of the intern's tenure and his assignment to work with Galarza is undisputed.  However, Galarza disputes the extent to which she was "assisted" by the intern, contending that he was not much help to her given that she had to take time to train him and only had his help during a limited time.

address complications resulting from her previous surgery.  Galarza was granted leave to undergo this surgical procedure.[2]

Before returning to work, Galarza emailed Genzer to inform her that Galarza's physician had released her to begin work on Monday, March 26, 2012 with a few restrictions.  Specifically, Galarza had been released to "light duty" with the possibility of having to wear scrubs to work or work from home until her surgical drain and stiches were removed.  Genzer responded that it would be fine for Galarza to wear scrubs but that she was unsure if Galarza would be able to access necessary electronic files from home.  Genzer requested a meeting to further clarify the scope of Galarza's restrictions once she returned to work.  After having this meeting and a series of emails between Galarza, Genzer, and the head of human resources, Chris Atkinson ("Atkinson"), Galarza announced that she was ready to return to work at full duty and that the only accommodation that she would need would be the ability to stretch periodically throughout the day.  Galarza also forwarded to Genzer and Atkinson letters from her physicians confirming that she was able to return to work at full duty with minor lifting restrictions.

From just about the beginning of her tenure with Ochsner, Galarza had been searching for another job in the Dallas area.  In April 2012, Galarza received a job offer from Parkland Health and Hospital System ("Parkland") in Dallas, which Galarza accepted.  The position at Parkland entailed the same responsibilities as those at Ochsner for substantially more pay.  Galarza notified Ochsner of her intention to resign effective June 1, 2012.  Galarza has worked as a Site Administrator for one of Parkland's primary care clinics since June 6, 2012.  She has been able

_____

[2] It is undisputed that Galarza was granted leave to undergo this follow-up procedure.  The nature of the dispute is whether such time was designated "short-term disability leave" and the correct citation to the record where the dates were discussed.  Ochsner has cited the correct pages of the Galarza's deposition to support this allegation.  However, the allegation incorrectly states the dates that Galarza was granted leave for this procedure.  The correct dates are from February 28 through March 26, 2012.  *Galarza Depo.*, Doc. 21-2, Ex. A, 119:12-120:4.

to perform her new job without any accommodations and has never requested accommodations from Parkland.

During her tenure at Ochsner, Galarza was granted every request for time off for medical or health-related reasons.  In total, Ochsner provided Galarza with 83 days of paid medical leave in 2011 and 19 more during the first five months of 2012.  Ochsner also provided Galarza with 39 days off for non-medical reasons.

In her first amended and supplemental complaint, Galarza alleges several causes of action against Ochsner for improper treatment that she received while combating breast cancer and continuing to work for Ochsner.   Specifically, Galarza asserts the following claims: (1) discrimination based upon a known disability under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. § 23:303;[3] (2) constructive discharge and retaliation under the ADA; (3) a violation of the Equal Pay Act, 29 U.S.C. § 206(d); (4) intentional infliction of emotional damage under Louisiana general tort principles; (5) a violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), La. Rev. Stat. § 51:1405; (6) a violation of the Family Leave Medical Act ("FMLA"), 29 U.S.C. § 2601 *et seq*; and (7) a violation of the Louisiana Whistleblower Act, La. Rev. Stat. § 23:967.

II.    Discussion

A.  Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact."  FED. R. CIV. P. 56(a).  The party seeking summary judgment

---

[3] Claims brought under the LEDL are analyzed using the same analytical framework and precedent as those brought under the ADA. *Tribble v. Quachita Parish Police Jury*, 939 F.Supp.2d 626, 629-30 (W.D. La. 2013) (citing *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir. 1989)).  For this reason, the Court's analysis and rulings regarding the claims brought under the ADA apply with equal force to those brought under the LEDL.

carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322-23.

### B.  Galarza's Motion for Partial Summary Judgment

Galarza moves the Court to dismiss Ochsner's request for attorney's fees and costs arguing that Ochsner has failed to produce any evidence to support its claim. In response, Ochsner argues that a determination of its entitlement to attorney's fees is premature at this stage of the litigation. The Court agrees.

The ADA's attorney's fees provision provides one vehicle by which an award of attorneys' fees may be granted in this case.[4]  The provision is codified at 42 U.S.C. § 12205 which reads in pertinent part,

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs…

As the text of § 12205 makes clear, a fee award can only be granted to a "prevailing party."  It goes without saying that before the Court can determine the propriety of granting an award, there must be a prevailing party.  To be considered a prevailing party under the ADA, a litigant must have an enforceable judgment or consent decree.  *See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).  Here, there is neither an enforceable judgment nor a consent decree.  Therefore, there is no prevailing party and Galarza's motion for partial summary judgment is premature.

Accordingly, Galarza's motion is denied as premature.  Once the Court has entered an enforceable judgment or consent decree, the prevailing party may move pursuant to the procedural mechanism provided for in FED. R. CIV. P. 54(d)(2)(B).

### C.  Ochsner's Motion for Summary Judgment

#### i.    Failure to Accommodate Under the ADA

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

---

[4] Ochsner avers that § 12205 is by no means the only vehicle by which it may recoup an attorney's fees award in this case.  Indeed, there are fee shifting provisions in both the Louisiana Employment Discrimination Law and the Louisiana Whistleblower statute.  *See* La. Rev.Stat. § 23:303(B); La. Rev. Stat. § 23:967(D).  Ochsner need not, and indeed cannot, determine the means by which it will seek an award of attorney's fees in the event that it is the prevailing party until after the Court has rendered judgment.  This fact lends even more credence to Ochsner's assertion that Galarza's motion is premature.

conditions, and privileges of employment." 42 U.S.C. § 12112(a). An employer can be found to have discriminated against an employee if it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." §12112(b)(5)(a). To prevail on a failure to accommodate claim under the ADA, Galarza must prove that (1) she is a "qualified individual with a disability"; (2) her disability and the limitations that it presented were known to Ochsner; and (3) Ochsner failed to reasonably accommodate her known limitations. *Neely v. PSEG Tex. Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013) (quotations omitted). Ochsner does not contest Galarza's satisfaction of the first two prongs of the analysis. Therefore, the issue is whether Ochsner failed to reasonably accommodate Galarza's known limitations.

Once a qualified individual with a disability requests a reasonable accommodation from her employer, both parties should engage in flexible, interactive discussions to determine the appropriate accommodation. *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009). "The ADA provides a right to a reasonable accommodation, not the employee's preferred accommodation." *Id.* Indeed, an accommodation "does not have to be the 'best' accommodation possible, so long as it is sufficient to meet the job-related needs of the individual being accommodation." 29 C.F.R. pt. 1630, App., § 1630.9. The employer has the "ultimate discretion" when choosing amongst two effective accommodations and may choose the accommodation that is cheaper or easier for it to provide. *Id.*

Galarza identifies two reasonable accommodations that Ochsner failed to provide: (1) a voice recorder to help her with memory issues brought on by chemotherapy treatments; and (2) assistance from an intern or Fellow to help her carry out her work related responsibilities. Notably, Galarza failed to provide any case law to support her entitlement to these reasonable

accommodations, nor does she address the case law that Ochsner has presented in support of its motion.  Ochsner responds that though it did not provide Galarza with a voice recorder, it did provide her with a company-issued Blackberry that had voice recording capabilities.  In addition to providing this device, Ochsner provided training on how to effectively use it.  Moreover, Ochsner avers that not only did it provide Galarza with an intern, but it also reassigned her departments to other employees and modified her duties to assist her with completing her work.  Ochsner notes that it was not legally obligated to take the latter action.

As it pertains to the first request for a reasonable accommodation, Galarza informed Genzer that she was suffering from short term memory loss as a result of her chemotherapy treatment and requested a voice recorder to "eliminate the memory obstacle."  *Email to Kristie Genzer*, Doc. 31-9, Ex. G.  Genzer responded to this request by informing Galarza that the company-issued Blackberry device had a voice recording function.  Genzer then met with Galarza to train her on how to use the voice recording function on her phone.  *Galarza Depo.*, Doc. 31-3, 191:16-192:1.  The Court finds that Ochsner provided Galarza with a reasonable accommodation when it trained her on how to use the recording function on the device already provided to her.  The Blackberry's recording function was meant to achieve the same end, i.e. to assist Galarza with remembering work-related tasks, as a voice recording device.  In fact, for all intents and purposes, the Blackberry *was* a recording device.  Ochsner concluded that it was unnecessary to purchase a separate device to accomplish the same result that the Blackberry would.  This is precisely a decision that the statute reserves to the "ultimate discretion" of the employer.  *See* § 1630.9.

Moreover, it appears that there was a breakdown in the interactive process that can be traceable to Galarza.  While she did not believe that the Blackberry's recording function met her

9

needs because the phone was password protected and thus difficult to use while driving, she neither presented evidence showing that she brought this concern to Genzer, nor did she present evidence proving her allegation that Ochsner rejected her request.  To the contrary, it appears that Galarza failed to bring her concerns to Ochsner and under those circumstances, "an employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer."  *Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 224 (5th Cir. 2011).

Addressing the second request for a reasonable accommodation, the Court finds that Galarza has failed to provide evidence of a genuine issue of material fact to prove that Ochsner did not reasonably accommodate her request for assistance with the completion of work-related tasks.  Fifth Circuit case law makes clear that an employer does not have to hire new employees or assign a qualified employee's responsibilities to existing employees as a reasonable accommodation.  *See Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) ("The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so."); *Robertson v. Neuromedical Center*, 161 F.3d 292, 295 (5th Cir. 1998) ("[T]he ADA does not require an employer to relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties.").  Fifth Circuit courts have reasoned that, "[i]f [the employee] can't perform the essential functions of [the employee's] job absent assigning those duties to someone else, (e.g., having someone else perform his job) then [the employee] cannot be reasonably accommodated as a matter of law."  *Robertson*, 161 F.3d at 295 (relying upon *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997)).  Despite the lack of a legal obligation,

Ochsner provided Galarza with an intern as she requested. *Galarza Depo*, Doc. 21-2, 78:11-79:5. Moreover, Ochsner reduced the scope of Galarza's duties by assigning her departments to her colleagues. The record reflects that Galarza's departments for which Galarza was responsible were reduced from four to two over the course of her illness. *Galarza Depo*, Doc. 21-2, 189:8-190:8.

Based upon the evidence, the Court finds that no reasonable juror could conclude that Ochsner failed to reasonably accommodate Galarza by providing her with training on how to use the company-issued Blackberry with voice recording capabilities already in her possession, instead of purchasing for her a separate voice recorder. Furthermore, Ochsner went beyond the obligations imposed upon it by law and provided Galarza with an intern and assistance from other colleagues to accommodate her request for a reduced scope of work-related responsibilities. Accordingly, Ochsner is entitled to summary judgment on this claim.

### ii.    Constructive Discharge and Retaliation Under the ADA

Ochsner argues that Galarza's constructive discharge and retaliation claims must fail for two reasons. The first reason is that Galarza failed to exhaust her administrative remedies. The second reason is that Galarza has failed to satisfy all of the elements of her asserted claims. Galarza counters that she exhausted her claim when she filed a complaint with the EEOC which contained factual allegations to substantiate her constructive discharge and retaliation claims. She further argues that in any event, the exception announced in *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) is applicable. Galarza also avers that her claims are entitled to survive Ochsner's motion for summary judgment.

### a.  Administrative Exhaustion

An employee must comply with the ADA's administrative prerequisites before she can bring an action in federal court against her employer for a violation of the ADA. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996).  The exhaustion requirement is satisfied when the plaintiff files a timely charge with the EEOC and receives a statutory right-to-sue notice.  *Id.* A lawsuit's scope is limited to the claims presented during the EEOC investigation and what can reasonably be expected to develop from the EEOC charge.  *E.E.O.C. v. Resources for Human Development, Inc.*, 827 F.Supp.2d 688, 697 (E.D. La. 2011).  When determining the scope of its inquiry, courts should bear in mind that "the crucial element of a charge of discrimination is the factual statement contained therein.  Everything else entered on the form is, in essence, a mere amplification of the factual allegations."  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970).

"The ADA incorporates by reference the procedures for exhaustion applicable to claims under Title VII."  *Franklin v. City of Slidell*, 936 F.Supp.2d 691, 709 (E.D. La. 2013) (citation omitted).  Several courts have recognized that constructive discharge and retaliation claims are distinct from discrimination claims.  *Frazier v. Sabine River Authority Louisiana*, 509 F. App'x 370, 374 (5th Cir. 2013); *Bouvier v. Northrup Grumman Ship Systems, Inc.*, 350 F. App'x 917, 921 (5th Cir. 2009) ("We have previously recognized that discrimination and retaliation claims are distinct, and the allegation of one in an EEO [sic] charge does not exhaust a plaintiff's remedies as to the other."); *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998) (holding that a "discrimination claim is separate and distinct from [a] reprisal claim, and accordingly [must be exhausted] before seeking review in federal court."); *Harvill v. Westward Communications, LLC*, 311 F.Supp.2d 573, 585 (E.D. Tex. 2004) (holding that the plaintiff's

failure to assert facts regarding constructive discharge precluded her from bringing the claim in federal court).

The factual statements asserted in Galarza's EEOC complaint are as follows:

I.     Ochsner Health System hired me on March 31, 2008 as a Referral Coordinator.  At the time of the discriminatory acts, I was working as Clinical Services Manager.  Since June 30, 2011, I have been subjected to disability discrimination and unfair terms and conditions of employment because of my disability.

II.    I was evaluated from January 1, 2011 until June 30, 2011, while I was undergoing treatment for my disability.  I was pressured to carry the same workload and perform the same level as other co-workers who were not battling a disability.  I was also scolded for "taking too much time off work." I had requested an accommodation verbally on April 25, 2011, which was ineffective.  On August 30, 2011, I requested an accommodation while continuing treatment for my disability and it was denied.

III.   I believe that I have been discriminated against because of my disability, in violation of the ADA Amendment Acts of 2008, as amended.

*EEOC Complaint*, Doc. 21-3, at 47-48.  As the factual allegations recited above make clear, Galarza did not assert a constructive discharge or retaliation claim.  The allegations contained therein only concern a claim for disability discrimination.  Therefore, Galarza has failed to exhaust her administrative remedies and is precluded from bringing a claim for constructive discharge or retaliation to this court.[5]  Accordingly, these causes of action must be dismissed.[6]

---

[5] Galarza attempts to use the *Gupta* exception to save her retaliation claim in the event that the Court found it to be procedurally barred.  The Court finds *Gupta* to be unavailing as it is inapplicable to the facts of this case.  First, the *Gupta* exception only applies when there is a properly exhausted administrative charge before the court.  *Gupta*, 654 F.2d at 414 ("[W]e hold that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.").  Second, *Gupta* does not govern cases where the plaintiff has asserted both a retaliation and discrimination claim.  *Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 273 (5th Cir. 2013) (refusing to apply the *Gupta* exception when the plaintiff asserted both a retaliation and discrimination claim basing its decision on Fifth Circuit precedent).

[6] Despite her assertion to the contrary, the Court's decision applies equally to the constructive discharge and retaliation claims that Galarza brings under the LEDL.  "Louisiana state and federal courts applying Louisiana law have held the filing of an EEOC charge of discrimination satisfies the notice requirement [of § 23:303(C)], but limits the state claim to the alleged discrimination detailed in the EEOC charge…"  *Johnson v. Hospital Corp. of America*, 767 F.Supp.2d 678, 700 (W.D. La. 2011).  Here, the Court has held that Galarza failed to exhaust her claims brought under the ADA for constructive discharge and retaliation because her EEOC complaint failed to contain factual

### iii.        Wage Discrimination Under the Equal Pay Act

The EPA makes it unlawful for employers to discriminate "on the basis of sex  . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions[.]"  29 U.S.C. § 206(d).  To establish a *prima facie* case under the EPA, the plaintiff must show that (1) the employer is subject to the EPA; (2) the plaintiff performed work "in a position requiring equal skill, effort, and responsibility under similar working conditions"; and (3) the plaintiff was "paid less than the employee of the opposite sex providing the basis of comparison."  *Chance v. Rice University*, 984 F.2d 151, 153 (5th Cir. 1993).  If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to "prove by a preponderance of the evidence that the wage differential is justified under one of the four affirmative defenses set forth in the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earning by quantity or quality of production; or (4) any factor other than sex."  *Siler-Khodr v. University of Texas Health Science Center San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001) (citations and quotations omitted).  Factors "other than sex" can include such things as differing levels of skill, work experience, and training.  *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983).  Once an employer proffers a legitimate statutory justification for the pay disparity, the burden shifts back to the plaintiff to prove that the proffered justification is mere pretext.  *Phillips v. TXU Corp.*, 194 F. App'x 221, 224 (5th Cir. 2006).  If the plaintiff fails to satisfy this burden by adducing evidence to establish a genuine issue of material fact on the issue of pretext, then the employer is entitled to summary judgment.  *Id.* at 226.

---

statements supporting these claims and that holding applies with equal force to her corresponding claims brought under the LEDL.  However, as the court in *Johnson* noted, Louisiana and federal courts interpreting § 23:303 have dismissed procedurally barred claims with and without prejudice.  *Johnson*, 767 F.Supp.2d at 701.  Since neither party has briefed whether this claim should be dismissed with or without prejudice and out of an abundance of caution, the Court will follow the *Johnson* court's example, and dismiss these state law claims without prejudice.

Ochsner does not contest that Galarza has established a *prima facie* case.  Therefore, the Court will proceed by evaluating Ochsner's asserted legitimate non-discriminatory reasons for its acts.  Galarza uses as comparators three men who held the title of Clinical Service Manager during her tenure with Ochsner: Steven Price ("Price"), John Lofky ("Lofky"), and Jag Grooms ("Grooms").  Galarza argues that she and Annabeth Scarle ("Scarle"), the other female Clinical Services Manager, were paid less than their male counterparts.  Ochsner admits that Price, Lofky, Grooms were paid more than Galarza and Scarle but asserts that there were legitimate, non-discriminatory reasons for doing so.  The Declaration of Compensation Manager Christy Wiss demonstrates that the male comparators were paid a higher salary because they either had superior credentials or more extensive work experience than Galarza and Scarle.  *Wiss Declaration*, Doc. 21-5, Ex. D.  Specifically, Price and Lofky participated in Ochsner's Administrative Fellowship Program, a competitive paid post-graduate fellowship designed to provide professionals interested in pursuing a career in healthcare administration with training and hands-on job experience.  *Id.* at ¶¶ 12-13.  In contrast, Galarza did not participate in the Administrative Fellowship Program.  *Id.* at ¶ 16.  Grooms was paid a higher starting salary than Galarza because he had almost double the relevant work experience than she had.  *Id.* at ¶ 17. The Court finds that Ochsner's proffered justifications for the pay disparity between Galarza and the three male comparators are legitimate in that they are based on factors other than sex, namely training and work experience.  The burden now shifts to Galarza to produce evidence demonstrating that these proffered justifications are merely pretext, obscuring unlawful discrimination.

Galarza offers the following as evidence of the pretextual nature of Ochsner's justifications: (1) she was better qualified than both Lofky and Grooms; (2) Price and Lofky

were offered promotional pay increases in excess of the 15% maximum promotional pay increases permitted by Ochsner's compensation policy at the time that they were hired; and (3) she and Scarle were given an "equity raise" which evidences a "conscious decision" to pay the two female Clinical Services Managers less than their male counterparts.  The Court finds that this evidence falls short of proving pretext.

First, to prove pretext on the basis of qualifications, Galarza must present evidence tending to show that she was clearly more qualified than her male counterparts.  *Scott v. University of Mississippi*, 148 F.3d 493, 508 (5th Cir. 1998).  "However, this evidence must be more than merely subjective and speculative." *Id.* (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996).  Galarza has failed to provide evidence proving that she was clearly more qualified than Lofky or Grooms.  The record reflects that Ochsner paid Lofky a higher salary based upon his participation in Ochsner's competitive post-graduate fellowship.  *Wiss Declaration*, Doc. 21-5, Ex. D, at ¶ 16.  Similarly, Grooms was paid a higher salary because he had twice the relevant work experience as Galarza.  *Id.* at ¶ 17.  Galarza has failed to present evidence that she possessed similar credentials or had more work experience than the two male comparators.  Additionally, Galarza has failed to present any evidence to dispute that these were in fact the reasons for the pay disparity.  Instead, the record reflects that Ochsner made a decision on wages determined by factors that it valued including training and experience.  Therefore, consistent with its precedent, the Court will not substitute its own view for "those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise..." *Kimble v. Georgia Pacific Corp.*, 245 F.Supp.2d 862, 878 n.26 (M.D. La. 2002) (citation omitted).

Next, Galarza argues that Price and Lofky starting salaries were in excess of the 15% maximum permitted by Ochsner's Compensation Policy. Ochsner responds that it paid Price and Lofky higher starting salaries in an effort to attract and retain employees who had completed a competitive fellowship program where they gained valuable experience. There is nothing untoward about recruiting desirable candidates with attractive compensation. Also militating against the Court accepting that this violation of company policy demonstrates pretext is the fact that Galarza's starting salary was well in access of a 15% promotional raise. *Wiss Declaration*, Doc. 21-5, Ex. D, at ¶ 9 (describing Galarza's salary adjustment from $21,424 as a Registration Coordinator to $46,200 as a Clinical Services Manager). Finally, the equity pay raise given to Galarza and Scarle are not evidence of a discriminatory intent. *See Ross v. Univ. of Texas*, 139 F.3d 521, 526 (5th Cir. 1998) (concluding that equity raises were not evidence of discrimination but rather "tend[ed] to negate, rather than support, an inference of discrimination"). Left with nothing more than these assertions, the Court finds that Galarza has failed to produce evidence of pretext to discredit Ochsner's legitimate non-discriminatory justifications for the pay disparity. Accordingly, Ochsner is entitled to summary judgment on this claim.

### iv.    Louisiana Unfair Trade Practices Act

In order to recover under LUTPA, a plaintiff must show that the defendant engaged in unfair methods of competition or committed unfair or deceptive trade practices in the conduct of trade or commerce. *Harris v. Poche*, 930 So.2d 165, 171, (La. App. 4th Cir. 2006). Galarza's claim brought under LUTPA arises out of the alleged mistreatment of female Clinical Services Managers as compared to their male counterparts and its mistreatment of her as a disabled employee. The Court finds that this claim should be dismissed as a matter of law because the claim does not fall within the scope of LUTPA.

First, Galarza's claim does not concern acts occurring "in the conduct of trade or commerce." La. Rev. Stat. § 51:1405(a).  "Trade" or "commerce" is defined in LUTPA as "the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state." § 51:1402(9).  Galarza's claim is not one for advertising, offering for sale, sale, or distribution of any services or property.  Instead, her claim is predicated on mistreatment during her employment with Ochsner.  Second, LUTPA seeks only to protect consumers and business competitors, and to deter injury to competition.  *Landreneau v. Fleet Financial Group*, 197 F.Supp.2d 551, 557 (M.D. La. 2002).  Galarza is neither a consumer nor a business competitor, but more importantly, she has failed to adduce any evidence of an unfair business practice that had an injurious effect on competition.  Therefore, since Galarza's claim fails to fall within the scope of LUTPA, Ochsner is entitled to summary judgment on this claim.  *See Montegut v. Williams Communication, Inc.*, 109 F.Supp.2d 496, 499 (E.D. La. 2000) (finding that since the plaintiffs' claim could not be defined as "trade" or "commerce" and the plaintiffs were not consumers, business competitors, or potential business competitors, the plaintiffs lacked a LUTPA claim).

### v.      Intentional Infliction of Emotional Distress

Under Louisiana law, a plaintiff may recover for intentional infliction of emotional distress ("IIED") by showing:

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

18

*White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).  The conduct "must be so outrageous in character, as to go beyond all possible bounds of decency" and must be "regarded as atrocious and utterly intolerable in a civilized community."  *Id.*  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not provide a basis for an IIED claim. *Id.* "The distress suffered by the employee must be more than a reasonable person could be expected to endure."  *Nicholas v. Allstate Insurance Co.*, 765 So.2d 1017, 1027 (La. 2000). Finally, "[l]iability can arise only where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct." *White*, 585 So.2d at 1210.  "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like."  *Id.*

Without specifically citing to the record, Galarza asserts the following facts to support her IIED claim: (1) Ochsner denied her reasonable requests for a voice recorder and assistance from an intern/Fellow; (2) she received a negative employee evaluation; and (3) she and a fellow female employee were paid less than their male counterparts.  Exacerbating this alleged experienced mistreatment is that fact that it occurred while she was suffering from, and undergoing treatment for cancer.  Ochsner responds by arguing that Galarza has failed to produce factual matter to satisfy the first and third elements of an IIED claim.  First, Galarza's asserted facts do not amount to "extreme and outrageous" conduct.  Second, Galarza has failed to adduce any evidence to demonstrate that anyone at Ochsner desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his or her conduct.  The Court agrees.

It is well settled that mere employment disputes ordinarily will not substantiate an IIED claim.  *See Griffith v. Louisiana*, 808 F.Supp.2d 926, 935 (E.D. La. 2011) ("IIED claims will not lie for mere employment disputes since an employer must be free to demote, transfer, discipline, and terminate employees even though such actions will undoubtedly be unpleasant and cause emotional distress."); *Barber v. Marine Drilling Mgt.*, No. 01-1986, 2002 WL 237848, *8 (E.D. La. Feb. 15, 2002) ("Conduct in the workplace, even if calculated to cause some degree of mental anguish, will rarely be so severe that it will rise to the level of 'outrageous conduct.'"); *Nicholas*, 765 So.2d at 1026 (cataloguing cases in which plaintiffs were unable to establish facts sufficient to constitute IIED).  This holds true even for cases involving claims of discrimination and/or harassment.  *See Tate v. Louisiana Dep't of Transp. and Development*, Civil Action No. 11-1212, 2013 WL 796015 *21 (E.D. La. Mar. 4, 2013) ("Employment disputes, even those involving discrimination and harassment, will rarely rise to the level of intentional infliction of emotional distress."); *Washington v. Mother Works, Inc.,* 197 F.Supp.2d 569, 572-73 (E.D. La. 2002) (finding that repeated racial slurs, ridicule for missing work to care for a cancer-stricken mother, experiencing different treatment than other managers, and termination did not rise to a level of extreme and outrageous conduct such that plaintiff would prevail on her IIED claim); *Stewart v. Parish of Jefferson*, 668 So.2d 1292, 1294 (La. App. 5th Cir. 1996) (affirming the trial court's finding that IIED was not shown despite the plaintiff suffering two years of harassment in which his supervisor questioned the plaintiff's personal life, increased his workload, and pressured him to take a demotion which ultimately led to his termination).

Applying the case law to the facts presently before the Court, the Court finds that they do not rise to the level of "extreme and outrageous" conduct.  Even if they could, Galarza has failed demonstrating that her experienced mistreatment "involve[d] a pattern of deliberate, repeated

harassment over a period of time." *Nicholas*, 765 So.2d at 1026.  Finally, Galarza has failed to point to any evidence in the record to demonstrate that anyone at Ochsner acted with the desire to inflict emotional distress upon her.  Accordingly, Ochsner is entitled to summary judgment on Galarza's IIED claim.

**vi.     Remaining Claims**

Galarza has two remaining claims: one brought under the FMLA, and the other brought under the Louisiana Whistleblower Act.  The Court will not address the merits of these claims as Galarza has elected to voluntarily dismiss them.  *See Opposition*, Doc. 31, at 21 & 23.

**III.     Conclusion**

For the reasons stated herein, the Plaintiff's Motion (doc. 19) for Partial Summary Judgment is **DENIED AS PREMATURE**.

The Defendant's Motion (doc. 21) for Summary Judgment is **GRANTED** and all of the Plaintiff's claims are **DISMISSED WITH PREJUDICE** with the exception of the disability discrimination claim brought under the LEDL which is **DISMISSED WITHOUT PREJUDICE**.

Signed in Baton Rouge, Louisiana, on April 14, 2014.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**